IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:16-CV-301-FL

| | |
|---|---|
| DAVID D. MITCHELL, JR., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL, )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. ) | **MEMORANDUM<br>AND RECOMMENDATION** |

In this action, plaintiff David D. Mitchell, Jr. ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security Nancy A. Berryhill ("Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB") on the grounds that he is not disabled. The case is before the court on the parties' motions for judgment on the pleadings. D.E. 18, 20. Both filed memoranda in support of their respective motions. D.E. 19, 21. The motions were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See* 5 June 2017 Text Ord. For the reasons set forth below, it will be recommended that plaintiff's motion be allowed, the Commissioner's motion be denied, and this case be remanded.

## I. BACKGROUND

### A. Case History

Plaintiff filed an application for DIB on 21 February 2014, alleging a disability onset date of 21 September 2012. Transcript of Proceedings ("Tr.") 15. The application was denied initially and upon reconsideration, and a request for a hearing was timely filed. Tr. 15. On 9 September 2015, a video hearing was held before the ALJ, at which plaintiff, represented by

counsel, and a vocational expert ("VE") testified. Tr. 32-74. On 25 January 2016, a supplemental video hearing was held before the ALJ, at which plaintiff, again represented by counsel, and a VE different from the one at the first hearing testified. Tr. 75-94. The ALJ issued a decision denying plaintiff's claims on 31 March 2016. Tr. 15-26.

Plaintiff timely requested review by the Appeals Council (Tr. 10), but on 16 June 2016, it denied the request (Tr. 1). At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 404.981. On 17 August 2016, plaintiff commenced this proceeding for judicial review of the ALJ's decision, pursuant to 42 U.S.C. § 405(g). *See* Compl. (D.E. 1).

**B.     Standards for Disability**

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* (d)(3).

The disability regulations under the Act ("Regulations")[1] provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

---

[1] The versions of the regulations cited herein are those in effect at the time of issuance of the 31 March 2016 ALJ decision.

2

To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the [R]egulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the [R]egulations; at step four, whether the claimant can perform [his] past work given the limitations caused by [his] medical impairments; and at step five, whether the claimant can perform other work.

The first four steps create a series of hurdles for claimants to meet. If the ALJ finds that the claimant has been working (step one) or that the claimant's medical impairments do not meet the severity and duration requirements of the [R]egulations (step two), the process ends with a finding of "not disabled." At step three, the ALJ either finds that the claimant is disabled because [his] impairments match a listed impairment [*i.e.*, a listing in 20 C.F.R. pt. 404, subpt. P, app. 1 ("the Listings")] or continues the analysis. The ALJ cannot deny benefits at this step.

If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity ["RFC"], which is "the most" the claimant "can still do despite" physical and mental limitations that affect [his] ability to work. [20 C.F.R.] § 416.945(a)(1).[2] To make this assessment, the ALJ must "consider all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," including those not labeled severe at step two. *Id.* § 416.945(a)(2).[3]

The ALJ then moves on to step four, where the ALJ can find the claimant not disabled because she is able to perform [his] past work. Or, if the exertion required for the claimant's past work exceeds [his] [RFC], the ALJ goes on to step five.

At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that "exists in significant numbers in the national economy," considering the claimant's [RFC], age, education, and work experience. *Id.* §§ 416.920(a)(4)(v); 416.960(c)(2); 416.1429.[4] The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the

---

[2] *See also* 20 C.F.R. § 404.1545(a)(1). This regulation is the counterpart for DIB to the above-cited regulation in *Mascio*, which relates to Supplemental Security Income ("SSI"). The statutes and regulations applicable to disability determinations for DIB and SSI are in most respects the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416.

[3] *See also* 20 C.F.R. § 404.1545(a)(2).

[4] *See also* 20 C.F.R. §§ 404.1520(a)(4)(v); 404.1560(c)(2); 404.929.

claimant's limitations. If the Commissioner meets her burden, the ALJ finds the
claimant not disabled and denies the application for benefits.

*Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015).

### C. ALJ's Findings

Plaintiff was 29 years old on the date of the alleged onset of disability; 31 years old on the date last insured, which the ALJ found to be 31 December 2014 (Tr. 17 ¶ 1); and 32 years old on the dates of both hearings. *See, e.g.*, 25 ¶ 7. The ALJ found that plaintiff has at least a high school education. Tr. 25 ¶ 8. The ALJ also found that plaintiff had past relevant work as a U.S. Marine. Tr. 25 ¶ 6.[5]

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity from the date of the alleged onset of disability through his date last insured. Tr. 17 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: anxiety disorder with panic attacks; post-traumatic stress disorder ("PTSD"); depression; substance (*i.e.*, alcohol) addiction disorder; traumatic brain injury; obesity; degenerative joint disease in both knees; right elbow olecranon spurring; and degenerative disc disease. Tr. 17-18 ¶ 3. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals any of the Listings. Tr. 18 ¶ 4.

The ALJ next determined that through the date last insured plaintiff had the RFC to perform a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the [RFC] to perform light work, as

---

[5] The ALJ failed to elicit from the VE at each hearing testimony regarding plaintiff's past relevant work. *See* Tr. 64-73, 87-93. Such failure should be addressed on remand.

defined in 20 CFR 404.1567(b)[6] and SSRs 83-10 and 96-8p, with the following limitations: must be able to stand for 5 minutes after sitting for 45 minutes and sit for 5 minutes after standing and/or walking for 30 minutes; occasionally push/pull and operate foot controls with both lower extremities; occasionally climb ramps or stairs; never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; and frequently reach and reach overhead with the right upper extremity. The claimant can have no exposure to loud or very loud noise; no exposure to vibration; and no exposure to unprotected heights, hazardous machinery or moving mechanical parts. The claimant is limited to jobs that can be performed while using a handheld assistive device, a cane, required at all times when walking and the contralateral upper extremity could be used to lift and carry up to exertional limits. The claimant's work limited to simple, routine, and repetitive tasks but not at a production rate pace; simple work-related decisions; few, if any, changes in the routine work setting; occasional interaction with the public; and frequent interaction with co-workers and supervisors. The claimant would be off task no more than 10% of the time in an 8-hour workday, in addition to normal breaks (with normal breaks defined as a 10-15 minute morning and afternoon break and a 30-60 minute lunch break).

Tr. 20 ¶ 5.

Based on his determination of plaintiff's RFC, the ALJ found at step four that plaintiff was unable to perform his past relevant work. Tr. 25 ¶ 6. At step five, the ALJ accepted the testimony of the VE at the second hearing and found that there were jobs in the national economy existing in significant numbers that plaintiff could have performed, including jobs in the occupations of office helper, mail clerk, and photocopying machine operator. Tr. 26 ¶ 10. The ALJ accordingly concluded that plaintiff was not disabled from the date of the alleged onset of disability, 21 September 2012, through the date last insured, 31 December 2014. Tr. 26 ¶ 11.

## II. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v.*

---

[6] *See also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "L-Light Work," 1991 WL 688702. "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. § 404.1567.

5

*Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Id.*

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## III. OVERVIEW OF PLAINTIFF'S CONTENTIONS

Plaintiff contends that the ALJ's decision should be reversed and remanded for a new hearing on the grounds that the ALJ erred by not properly evaluating (1) the decision of the Department of Veterans Affairs ("VA") that plaintiff had a 100 percent service-connected disability regarding his PTSD; (2) the opinions of physician Mary Lee Morehouse, M.D., Chief of Primary Care at the Fayetteville VA Medical Center ("Fayetteville VAMC"); and (3) the opinions of speech language pathologist Joy A. Wells, M.A., C.C.C.–S.L.P.,[7] of the Fayetteville VAMC. Because the court finds the issue of the ALJ's evaluation of Dr. Morehouse's opinions to be dispositive of this appeal, the court's analysis will focus on it and the deficiencies related to it.

## IV. ALJ'S EVALUATION OF DR. MOREHOUSE'S OPINIONS

### A. Applicable Legal Principles

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); *see also id.* § 404.1513(a) (listing acceptable medical sources). An ALJ must consider all medical opinions in a case in determining whether a claimant is disabled. *See id.* § 404.1527(c); *Nicholson v. Comm'r of Soc. Sec. Admin.*, 600 F. Supp. 2d 740, 752 (N.D.W. Va. 2009) ("Pursuant to 20 C.F.R. § 404.1527(b), 416.927(b), an ALJ must consider all medical opinions when determining the disability status of a claimant.").

The Regulations provide that opinions of treating physicians and psychologists on the nature and severity of impairments are to be accorded controlling weight if they are well

---

[7] "C.C.C.-S.L.P." signifies Certificate of Clinical Competence for Speech-Language Pathologists.

7

supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *see Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. Ruling 96-2p, 1996 WL 374188 (2 July 1996). Otherwise, the opinions are to be given significantly less weight. *Craig*, 76 F.3d at 590. In this circumstance, the Regulations prescribe factors to be considered in determining the weight to be ascribed, namely, the length and nature of the treating relationship, the supportability of the opinions, their consistency with the record, any specialization of the source of the opinions, and other factors that tend to support or contradict the opinions. 20 C.F.R. § 404.1527(c)(2)-(6).

The ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *5; *see also* 20 C.F.R. § 404.1527(c)(2); *Ashmore v. Colvin*, No. 0:11-2865-TMC, 2013 WL 837643, at *2 (D.S.C. 6 Mar. 2013) ("In doing so [*i.e.*, giving less weight to the testimony of a treating physician], the ALJ must explain what weight is given to a treating physician's opinion and give specific reasons for his decision to discount the opinion.").

The same basic standards that govern evaluation of the opinions of treating medical sources not given controlling weight and explanation of the weight given such opinions apply to the evaluation of opinions of examining, but nontreating sources, and nonexamining sources. *See* 20 C.F.R. § 404.1527(c), (e); *Casey v. Colvin*, No. 4:14–cv–00004, 2015 WL 1810173, at *3 (W.D. Va. 12 Mar. 2015), *rep. & recomm. adopted*, 2015 WL 1810173, at *1 (21 Apr. 2015); *Napier v. Astrue*, No. TJS-12-1096, 2013 WL 1856469, at *2 (D. Md. 1 May 2013). More

weight is generally given to the opinions of a treating source than to the opinions of a nontreating examining source and to the opinions of an examining source than to the opinions of a nonexamining source. *See* 20 C.F.R. § 404.1527(c)(1), (2). Under appropriate circumstances, however, the opinions of a nontreating examining source or a nonexamining source may be given more weight than those of a treating source. *See, e.g., Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (affirming ALJ's attribution of greater weight to the opinions of a nontreating examining physician than to those of a treating physician); Soc. Sec. Ruling 96–6p, 1996 WL 374180, at *3 (2 July 1996) ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.").

The factors used to determine the weight to be accorded the opinions of physicians and psychologists and other acceptable medical sources not given controlling weight also apply to the opinions of providers who are deemed to be at a different professional level, or so-called "other sources." *See* Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *2, 4 (9 Aug. 2006); 20 C.F.R. § 404.1513(d) (listing other sources). As with opinions from physicians and psychologists, the ALJ must explain the weight given opinions of other sources and the reasons for the weight given. *See* Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *6; *Napier*, 2013 WL 1856469, at *2. The fact that an opinion is from an acceptable medical source may justify giving that opinion greater weight than an opinion from an other source, although circumstances can justify giving opinions of an other source greater weight. Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *5.

Opinions from medical sources on the ultimate issue of disability and other issues reserved to the Commissioner are not entitled to any special weight based on their source. *See* 20 C.F.R. § 404.1527(d); Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *2, 5 (2 July 1996). But these opinions must still be evaluated and accorded appropriate weight. *See* Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *3 ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.").

**B.   Analysis**

Plaintiff contends that the ALJ committed reversible error by not stating the weight he attributed to the opinions of Dr. Morehouse. The court agrees.

Plaintiff was treated at the Fayetteville VAMC on at least 25 occasions between 16 September 2014 and 24 February 2016. Tr. 441-534, 540-666, 864-88, 890-900. On 13 November 2014, Dr. Morehouse completed a caregiver certificate form for the purpose of determining whether plaintiff met the requirements for appointment of his wife, Jennifer Mitchell, as his caregiver pursuant to a family caregiver program. Tr. 799-805.

The first section of the form sets out criteria grouped into seven primary requirements, each of which Dr. Morehouse found plaintiff met. Tr. 799-801. Among other findings in this section, Dr. Morehouse found that plaintiff had suffered a serious injury that rendered him "in need of a family caregiver to": (1) "[s]upport [his] health and wellbeing"; (2) "[p]erform personal functions required in everyday living"; and (3) "[e]nsure [he] remains safe from hazards or dangers incident to his . . . daily environment." Tr. 799, Primary Require. 2.A-C. Dr. Morehouse further found that plaintiff required "a minimum of 6 months of continuous and

10

approved caregiver support" to assist in the following activities of daily living: "[d]ressing and undressing self"; "[p]ersonal hygiene (bathe in order to keep self clean)"; and "[g]rooming (groom in order to keep self presentable)." Tr. 799, Primary Require. 3.A.i-iii. She next found that plaintiff "needs supervision, protection, or assistance based on symptoms or residuals of neurological or other impairment or injury (including Traumatic Brain Injury, psychological trauma or other mental disorders) due to": (1) "[d]ifficulty with planning and organizing (such as the ability to adhere to medication regimen)"; (2) "[s]afety risks (wandering outside the home, danger of falling, using electrical appliances, suicidal ideation, etc.)"; (3) "[d]ifficulty with sleep regulation"; (4) "[d]elusions or hallucinations"; (5) "[d]ifficulty with recent memory"; and (6) "[s]elf regulation (being able to moderate moods, agitation or aggression, etc.)." Tr. 800, Primary Require. 3.B.ii-vii.

The next section of the form consists of a set of scores for plaintiff regarding activities of daily living. Tr. 802-03. Dr. Morehouse determined that plaintiff needed minimal assistance, meaning he "completes 75% or more of a task/activity with supervision/coaching assistance," with grooming, bathing, and dressing. Tr. 802-03. In completing this and the remaining sections of the form, Dr. Morehouse indicated that she relied on information from "Chart Review," presumably signifying review of plaintiff's treatment records, and reports from his wife. *See* Tr. 802.

The next section of the form consists of a set of scores for plaintiff regarding supervision and protection of plaintiff. Tr. 803-04. Dr. Morehouse determined that plaintiff needed minimal assistance with respect to his "[d]ifficulty with planning and organizing (adhering to medication regimen, managing financial and other household affairs)" and "[d]ifficulty with sleep regulation." Tr. 803, 804. Dr. Morehouse also found that plaintiff needed moderate assistance,

11

meaning he "completes 50-75% of task/activity with some hands on help, with respect to the following: (1) [s]afety risks (significant risk of falling, wandering outside the home, leaving stove/oven on, crossing street, using electrical appliances, suicidal ideation)"; (2) "[r]equires assistance/supervision as a result of delusions/hallucinations"; (3) "[d]ifficulty with recent memory (forgets what day it is, what happened yesterday, etc.)"; and (4) "[s]elf regulation (being able to moderate moods, agitation/aggression)."[8] Tr. 803-04.

Dr. Morehouse concluded that plaintiff was at the moderate dependence level[9] and qualified for the caregiver program. Tr. 804. Following this conclusion, she set out the following notations:

> According to caregiver patient is still having problems with etoh abuse, but it has improved[.] Caregiver denies any other substances[.]
> According to chart [plaintiff] has [history] of ADhD and until 3 months ago was taking Adderal[.]
> According to the Caregiver the patient is not going to school or working[.]
> According to the caregiver, while [plaintiff] can physically dress, groom himself and bathe, he must be reminded daily or he will not do these ADLs, she states he will go 4 days occasionally longer before he showers, changes clothes or grooms himself. [Plaintiff] has a brace for his left knee and right elbow[.]
> Caregiver has to assist with medications, uses pill reminder and has alarms on phone and tablet[.]
> Caregiver states the [plaintiff] has had 2 suicide attempts in 2 years[.]

---

[8] The caregiver certificate form has two levels of assistance greater than that required at the minimal and moderate levels. Tr. 803. The level above moderate assistance is maximal assistance, which indicates a "[v]eteran completes 25-49% of task/activity with some hands on help." Tr. 803. The level above maximal assistance is total assistance, which indicates a "[v]eteran completes <25% of task/activity or is unable to do task without assistance." Tr. 803.

These standards are not the same as those used in the Regulations to indicate level of limitation imposed by mental impairments. These levels are mild, moderate, marked, and extreme. *See* Listing 12.00C. The Regulations provide in relevant part:

> Where we use "marked" as a standard for measuring the degree of limitation, it means more than moderate but less than extreme. A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis.

Listing 12.00C.
[9] While moderate level of dependence is not specifically defined in the caregiver certificate form, it clearly is not equivalent to moderate limitation as defined in Listing 12.00C because there is no specification in Listing 12.00C that moderate limitation entails need for a caregiver.

> *****According to the Caregiver, the [plaintiff] stopped going to group because it made him anxious but I cannot see in the Mental health notes where patient has attended group. He is not enrolled in CARP for this ETOH abuse, No Treatment for ADHD No PTSD group. The [plaintiff] had been treated by pain management in the past, and had individual therapy thr Precision.
> According to the caregiver patient has nightmares, does not sleep well at night and will fall asleep on the couch[.]
> According to mental health notes and Caregiver [plaintiff] has delusions and hallucinations. Caregiver states they have decreased in frequency and duration[.]
> Caregiver states patient is on Seraquil but does not see in difference in his hallucinations/delusions[.]
> Caregiver states [plaintiff] has poor short term memory, he forgets conversations, appointments and other things[.]
> Caregiver has a son with Aspbergers, states there is friction between her husband and child, she has worked with [plaintiff] to walk away instead of engaging with her son[.]
> Caregiver states [plaintiff] gets agitated and yells, and throws things. He is aggressive but not physically aggressive to the Caregiver or the children[.]

Tr. 804-05 (formatted as in original).

The ALJ failed to address the caregiver certificate form and thereby the assessment by Dr. Morehouse reflected in it. Indeed, the ALJ did not even include in his decision a citation to the exhibits containing copies of the form, Exhibits 8F and 10F.

The Commissioner appears to argue that the ALJ was not required to discuss Dr. Morehouse's assessment because it comprises simply a collection of subjective statements by plaintiff and his wife, and not medical opinions. As noted, however, while Dr. Morehouse stated that she did rely on plaintiff's wife's reports, she also indicated that she relied on "Chart Review," presumably signifying treatment notes for plaintiff. Tr. 802, 804-05.

Moreover, the form is not simply a compendium of information from these sources. It reflects Dr. Morehouse's judgment as to plaintiff's level of functional limitation in a broad range of areas, the corresponding level of assistance he requires in those areas, and his overall need for the assistance of a caregiver. The form therefore qualifies as a group of medical opinions—that is, statements from a physician that "reflect judgments about the nature and severity of [a

13

claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). The ALJ was therefore required to evaluate the opinions of Dr. Morehouse reflected in the caregiver certificate form, indicating the weight he assigned them and the reasons for such weight. The ALJ's failure to do so was error.

The error was not harmless. *See, e.g., Garner v. Astrue*, 436 F. App'x 224, 226 n.* (4th Cir. 2011) (applying *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)). Proper consideration of Dr. Morehouse's opinions could reasonably be expected to have resulted in a different RFC determination and thereby possibly a different outcome on the ultimate determination on disability.

Among other reasons, as a physician, Dr. Morehouse is an acceptable medical source. *See* 20 C.F.R. § 404.1513(a)(1). This fact tends to lend weight to her opinions. *See* Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *5. Further, her opinions are well supported. 20 C.F.R. § 404.1527(c)(3). Her ultimate opinion that plaintiff needs a caregiver is explained by numerous underlying findings, and she reviews factual information upon which her opinions are based. In addition, her relationship to plaintiff is more akin to that of a treating source than a consultant. Her opinions affect the provision to plaintiff of treatment-related services. To be sure, the record does not establish that she examined plaintiff, which does tend to detract from the weight accordable to her opinions. But, as mentioned previously, the opinions of nonexamining sources can, when appropriate, be given more weight than those of examining sources. Soc. Sec. Ruling 96-6p, 1996 WL 374180, at *3.

Other evidence of record is consistent with Dr. Morehouse's opinions, another factor tending to give them weight. 20 C.F.R. § 404.1527(c)(4). This evidence includes other

Fayetteville VAMC treatment records. For example, plaintiff received cognitive therapy at the Fayetteville VAMC for attention and memory from 21 October 2014 to 22 January 2015. Tr. 610-12, 616-18, 633-35, 639-42, 660-65. At his 21 October 2014 evaluation for cognitive therapy, speech language pathologist Wells administered the Repeatable Battery for the Assessment of Neuropsychological Status to assess plaintiff's cognitive-linguistic functions. Tr. 663. It was noted that plaintiff scored in the low average range for immediate memory, language, and attention. Tr. 663. Plaintiff scored in the borderline range for delayed memory. Tr. 663. At the last cognitive therapy visit, on 22 January 2015, it was noted that plaintiff's progress as to his short-term goals was ongoing, and plaintiff continued to report problems with memory, finishing tasks, and his marriage. Tr. 611-12. As of September 2015, plaintiff appears to have been continued in the family caregiver program with his wife as his caregiver. Tr. 39, 879-82.

Significantly, the ALJ did not address these records from the Fayetteville VAMC. In fact, the ALJ discussed only one of six exhibits containing records from the Fayetteville VAMC—Exhibit 15F (Tr. 861-88). Tr. 21-23 ¶ 5. The five exhibits left unaddressed by the ALJ are: Exhibit 2F (Tr. 378-83); Exhibit 7F (Tr. 441-534); Exhibit 8F (Tr. 538-676); Exhibit 10F (Tr. 688-823) [10]; and Exhibit 16F (Tr. 890-900). In total, the ALJ discussed only two appointments covering five pages from a total of over 200 distinct pages of records from the Fayetteville VAMC.

Moreover, among the mental health records the ALJ did discuss, only one postdates the caregiver certificate form completed by Dr. Morehouse. *See* Tr. 21-22 ¶ 5 (discussion of 9 Nov. 2015 psychotherapy note of psychologist James Colwell, Ph.D.). The prior records upon which

---

[10] Exhibit 8F contains the same documents as Exhibit 10F, as well as four additional pages not containing substantive information about plaintiff's treatment.

15

the ALJ focused generally depict plaintiff's mental impairments as less limiting than does Dr. Morehouse's assessment.

For example, there is the 18 November 2013 assessment by examining consultative psychologist C. Craig Farmer, Ph.D., to which the ALJ gave substantial weight. Tr. 858-60. As summarized by the ALJ,

> [Dr. Farmer] opined the claimant had the ability to sustain attention to perform simple, repetitive tasks adequately, had normal ability to relate to others including fellow workers and supervisors, and his ability to tolerate the stress and pressures associated with day-to-day work activity appeared to be adequate. Dr. Farmer further opined the claimant had a GAF of 60, which reflects moderate symptoms and/or functional limitations. (Exhibit 14F).

Tr. 23 ¶ 5. Similarly, the nonexamining state agency psychological consultants opined in July 2014 and September 2014 that, as stated by the ALJ, "the claimant had moderate limitations in activities of daily living, social functioning and concentration, persistence and pace; was capable of completing simple tasks in a stable work setting without a great deal of interpersonal interaction." Tr. 24 ¶ 5. The ALJ also gave these opinions substantial weight. Tr. 24 ¶ 5. Clearly, Dr. Morehouse found plaintiff more limited than Dr. Farmer and the nonexamining state agency consultants in determining that he required a caregiver largely due to his mental limitations. The record is thus suggestive of the failure by the ALJ to take into consideration, or at least to account for, a possible decline in plaintiff's condition, as reflected in Dr. Morehouse's assessment, after the period upon which he focused.[11]

While substantiating the likelihood that proper consideration of Dr. Morehouse's opinions could produce a different RFC determination and outcome on disability, the ALJ's seemingly selective consideration and discussion of the record generally itself constitutes

---

[11] Other mental health-related records prior to Dr. Morehouse's assessment in November 2014 discussed by the ALJ were the medical source statement of treating licensed clinical addiction specialist Jim Bennett, M.A., L.C.A.S. in April 2014 (Tr. 23-24 ¶ 5) and the reports of examining consulting physicians Benjamin Mozie, M.D. in October 2013 (Tr. 853-56) and Wesley W. Murfin, M.D. in August 2014 (Tr. 432-36).

16

reversible error. A denial of benefits is not supported by substantial evidence if the ALJ "has [not] analyzed all evidence and . . . sufficiently explained the weight he has given to obviously probative exhibits." *Gordon v. Schweiker*, 725 F.2d 231, 236 (1984). Furthermore, "'[a]n ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding.'" *Lewis*, 858 F.3d 858, 869 (4th Cir. 2017) (quoting *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)).

The likelihood that proper consideration of Dr. Morehouse's opinions could result in a different determination on disability is also enhanced by the multiplicity of limitations the ALJ found plaintiff to have even without proper consideration of her opinions. Again, the ALJ found plaintiff restricted to a significantly limited range of light work as follows:

> [He] must be able to stand for 5 minutes after sitting for 45 minutes and sit for 5 minutes after standing and/or walking for 30 minutes; occasionally push/pull and operate foot controls with both lower extremities; occasionally climb ramps or stairs; never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; and frequently reach and reach overhead with the right upper extremity. The claimant can have no exposure to loud or very loud noise; no exposure to vibration; and no exposure to unprotected heights, hazardous machinery or moving mechanical parts. The claimant is limited to jobs that can be performed while using a handheld assistive device, a cane, required at all times when walking and the contralateral upper extremity could be used to lift and carry up to exertional limits. The claimant's work limited to simple, routine, and repetitive tasks but not at a production rate pace; simple work-related decisions; few, if any, changes in the routine work setting; occasional interaction with the public; and frequent interaction with co-workers and supervisors. The claimant would be off task no more than 10% of the time in an 8-hour workday, in addition to normal breaks (with normal breaks defined as a 10-15 minute morning and afternoon break and a 30-60 minute lunch break).

Tr. 20 ¶ 5. Imposition of further limitations on plaintiff's functional capacity on the basis of Dr. Morehouse's opinions could conceivably result in significant further erosion of the occupational base available to him.

The ALJ's failure to address Dr. Morehouse's opinion is harmful in another sense. By failing to explain the weight he attributed to Dr. Morehouse's opinions and the reasons for such weight, the ALJ failed to build "'an accurate and logical bridge from the evidence to [the] conclusion[s]'" he reached regarding his RFC determination and his determination on disability, as required. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016). For example, as noted, the ALJ did not address, and thereby leaves unreconciled, the apparent inconsistency between the opinions of Dr. Farmer and the nonexamining state agency consultants and those of Dr. Morehouse. In this specific context and generally, the court is left to guess whether the ALJ rejected the opinion of Dr. Morehouse that plaintiff requires a caregiver and the related opinions or, if not, how they are accommodated in the RFC determination. The court is thereby precluded from conducting a meaningful substantial-evidence review of the ALJ's decision, and remand is required on this independent basis.[12]

## V. CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's motion (D.E. 18) for judgment on the pleadings be ALLOWED, the Commissioner's motion (D.E. 20) for judgment on the pleadings be DENIED, and this case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Recommendation.

---

[12] Given the recommended disposition of this appeal on the grounds stated, the court need not address plaintiff's other contentions. Nonetheless, as alluded to above, the ALJ did not discuss the opinions of speech language pathologist Wells. His failure to do so presents concerns comparable to those raised by his failure to address the opinions of Dr. Morehouse. *See, e.g.*, 20 C.F.R. § 404.1513(a)(5) (providing that qualified speech language pathologists are acceptable medical sources for purposes of establishing speech or language impairments). The Commissioner should ensure that her decision on remand addresses all medical source opinions as required by the Regulations.

In making this ruling, the court expresses no opinion on the weight that should be accorded any piece of evidence or the outcome of this case. These are matters that are for the Commissioner to resolve.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until 28 August 2017 to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Any response to objections shall be filed within 14 days after filing of the objections.

This 14th day of August 2017.

_____
James E. Gates
United States Magistrate Judge